## No. 25155

**The People of the State of Colorado v. Dannis Carroll Hutto**
(509 P.2d 298)

Decided April 23, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Aurel M. Kelly, Assistant, Gregory Williams, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Thomas M. Van Cleave, III, Deputy, for defendant-appellant.

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Defendant, Dannis Carroll Hutto, was tried and convicted of burglary in the second degree. The evidence of defendant's guilt consisted of the testimony of his alleged accomplice, Timothy Pyfer, and the corroborating testimony of one Suzanne Laviolette. Defendant maintains that the trial court erred in several respects with regard to Miss Laviolette's testimony, which testimony was crucial to his conviction. We agree and reverse the conviction below.

At trial Pyfer testified that at approximately 3:00 a.m. on September 16, 1970, he and the defendant entered the Placer Inn where they took some money and other items. On cross-examination, Pyfer admitted that after he implicated the defendant with his initial statement to police officers, he asked for leniency. Betty Thatcher, whom the arresting officers contended had given information which caused them to arrest the defendant, testified for the prosecution. She averred that the defendant had denied to her any complicity in the crime and the People did not claim surprise at this testimony.

Upon the defendant's case, an investigator for the Public Defender's office testified that Pyfer had told him defendant

was not implicated and had so testified. Thereafter, the defendant took the stand on his own behalf and testified that he had been with Pyfer the evening before the burglary, but had left Pyfer sometime between 12:00 p.m. and 2:00 a.m., and returned to his room. According to the defendant it was not until the next day, when he accompanied Pyfer to Pyfer's motel room, that he became aware that Pyfer had stolen some money.

After defense rested the People were allowed to call in rebuttal a witness not endorsed on the original information. This witness was Suzanne Laviolette. She testified that at 2:30 a.m. on September 16, 1970, she was parked in the parking lot of the Buffalo Cafe with a person by the name of Joe, whose last name she did not know and whose whereabouts she did not know. She stated that from that point she saw Pyfer and the defendant in the alley behind the Placer Inn. Upon cross-examination she stated that she was not very far from the defendant. Miss Laviolette also admitted she had previously made a written statement to the Idaho Springs Police Department. Defense counsel moved for its production, and the court so ordered. However, neither the police nor the district attorney could find the statement, whereupon the court denied defense counsel's motion to strike her testimony. Miss Laviolette also admitted that the defendant had stopped dating her shortly before the incident.

After excusing Miss Laviolette defendant made a motion, out of the presence of the jury, to present surrebuttal testimony to Miss Laviolette's testimony. Defendant made an offer of proof that he would call investigator Milton who would testify that the distance between the Buffalo Cafe parking lot and the alley behind the Placer Inn is 2 1/2 blocks and it is impossible to see the back of the Placer Inn from the parking lot of the Buffalo Cafe. This motion was denied.

As a corrollary to the foregoing the trial court rejected defendant's tendered Instruction No. 16, concerning both the existence or non-existence of corroboration, and the caution to be exercised when weighing the uncorroborated testimony of an accomplice.

## I.

It is irrefutable that Miss Laviolette's testimony was crucial. Without that testimony the People's evidence would have consisted primarily of the uncorroborated and contradicted testimony of an alleged accomplice who admitted asking for leniency upon implicating the defendant. In apparent disregard of the importance of Miss Laviolette's testimony, both the trial court and the prosecution contributed to a chain of circumstances surrounding that testimony which improperly prejudiced the defendant. This, we hold, compels reversal.

Since Miss Laviolette was not endorsed as a witness the defendant could not be reasonably expected to conduct his cross-examination as thoroughly as he would if he had known of her existence in advance. He did, however, adduce an admission on her part that she had previously given a written statement to police which they were unable to produce. Without this statement the defendant was denied an important tool in testing the witness' credibility and the reliability of her testimony. Under these circumstances the defendant's efforts to properly cross-examine this witness were hampered.

His effort to cross-examine thwarted, the defendant then attempted to impeach Miss Laviolette's testimony by presenting the surrebuttal testimony of Investigator Milton with respect to the distance and position of the Buffalo Cafe as it relates to the Placer Inn. While it is true the propriety of surrebuttal is usually within the discretion of the trial court, under the circumstances of this case the defendant had a right to respond to Miss Laviolette's testimony with testimony contradicting the circumstances upon which this witness based her identification, and the court's ruling to the contrary was an abuse of discretion. *Barry v. People,* 29 Colo. 395, 68 P. 274; *Fasching v. Minneapolis St. P. & S. M. R. Co.,* 351 Ill. App. 191, 114 N.E.2d 463.

The People maintain that even if Milton's testimony was proper surrebuttal, the defendant did not lay a foundation for such testimony while cross-examining Miss

Laviolette. This position has no merit. The rule that a witness cannot be impeached by showing he has made statements at another time inconsistent with his testimony without a foundation being laid by interrog. ting the witness does not apply where the attempt to contradict the witness merely consists of showing acts and circumstances inconsistent with his testimony. *Barry v. People, supra.*

The defendant's effort to make a factual issue of the credibility of Miss Laviolette's testimony met with a final obstacle when the trial court refused to submit to the jury defendant's tendered instruction on the caution to be exercised when weighing the uncorroborated testimony of an accomplice in the event the *jury* found there was no corroboration. Thus, the jury was not only denied exposure to serious weaknesses in the testimony of the only witness who corroborated the accomplice's story, but also denied the benefit of an instruction as to their function in determining what their duty was in the event they found no corroboration. *Bradley v. People,* 157 Colo. 530, 403 P.2d 876.

In the final analysis the circumstances surrounding Miss Laviolette's testimony, when considered in aggregate, constituted an undue restriction on the defendant's right to impeach the testimony of this crucial witness and compel this Court to grant defendant a new trial.

## II.

In the event of retrial, we will address defendant's other arguments on this appeal.

Defendant maintains the arrest of himself and Timothy Pyfer was without probable cause, invalidating the search of Pyfer's motel room incident to that arrest and requiring the trial court to grant defendant's motion to suppress the fruits of that search.

Whatever the merits of defendant's argument concerning the legality of the arrest, it was established without contest that Timothy Pyfer voluntarily consented to the search of his motel room to which the defendant admittedly had access the day after the burglary. Under these

circumstances Pyfer's voluntary consent provides an independent and constitutional basis for the search as well as a justification for the use of the items seized as evidence of defendant's guilt. *Lanford v. People,* 176 Colo. 109, 489 P.2d 210, 212; *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684, and *White v. U. S.,* 444 F.2d 724 (10th Cir.). Therefore, the trial court's denial of the suppression motion was proper.

We have reviewed defendant's other assignments of error and do not consider them meritorious.

The judgment is reversed and the cause remanded for a new trial.